THOMAS, Justice.
A bill of complaint was filed by 'the appellant, Isabel Copeland, against her husband, Edward Rivers Copeland, by which the plaintiff sought separate maintenance and the custody of the parties’ infant boy.
In his answer the defendant-husband prayed that the court grant him a divorce and the custody of the child, and that the court decree that two pieces of property jointly owned by 'him and his wife were, in the circumstances alleged, his alone in fee simple.
During the progress of the suit the husband died so the question of divorce was eliminated and the chancellor thereafter confined his consideration to the welfare of the child and status of the property.
The members of this court are in agreement in the view there was. overwhelming testimony to support the chancellor’s conclusion that the conduct and habits of the appellant and her treatment of the child demonstrated her unfitness to' rear him and that he should remain in the custody of the persons named by the chancellor who had for a long period of time given him the excellent car.e he deserved. Of course, this custody may be altered whenever the mother can convince the chancellor that she has become rehabilitated.
After the father died the infant, through his next friend, instituted a suit for a declaratory decree defining his interest,in the properties. The two suits were consolidated and we now, having decided that the chancellor’s ruling fixing . the custody of the child should not be disturbed, focus our attention on the. question, constituting a challenge to the provisions of the decree relating to the two tracts of land.
In reviewing the facts about the conveyances, it is important to bear in mind the chronology of relevant events. The parties were married in August, 1941. In October, 1941, and in April, 1942, deeds were executed to them as man and wife conveying the two tracts respectively and creating the estates by entireties. On April, 1943, 'the little boy was born. More than eight years after his birth and about ten years after the deeds were executed the husband first questioned the state of title by claiming in his answer that: “The property was conveyed to him and the plaintiff as tenants by the entireties, upon the assumption and belief that it was the plaintiff’s intention, in good faith, to strive to make the defendant a comfortable home life and to be a proper wife to the defendant.” We have italicized that part of the quotation serving as an introduction to the contention of the appellee which the chancellor upheld.
It appears from the allegation just quoted and underscored that the creation of the estatés by the entireties :'was claimed to have been founded on the assumption by *855 the husband that his bride would- make a good wife and, conversely, that if she did not fulfill his expectations the estates would determine because the consideration would have failed. There can be no doubt about this position for in the appellee’s brief it is asserted that the wife by “her own actions vitiated any consideration upon which title was taken as estates by the entireties * * The chancellor adopted this view when he recited that it was “apparent [from the counterclaim that the husband] created the tenancy by the entire-ties * * * with the intention of bestowing a gift upon his young wife upon the condition subsequent,, nevertheless, that she would fully discharge her duties and obligations of her marital . vows as his wife.”
We think it is fitting here to repeat that to these persons a child was born after the last conveyance was arranged by the husband. So, obviously, the marriage had an auspicious beginning, even if it did later go upon the rocks. And it is well to repeat that it was many years later when the husband had been brought into court that he first questioned the validity of his wife’s interest.
We are frank to say that we have taken into consideration the fact that the father was a respected and able member of this bar, and the presumption that during the intervening years he knew well the effect of the instruments.
The disposition of the question by the chancellor is most appealing as securing to the deserving child an interest which he could not get upon upholding the integrity of the estates intended to be created by the husband through the deeds to himself and his wife, but we believe that if we were to approve this decision of the question we would at once do what appeared to be justice in an individual case while disturbing settled principles of law. Such is not our privilege.
At the moment the deeds were executed . and delivered a definite interest in an estate long since recognized by this and other .courts came into existence and no condition subsequent • was grafted on. it. This is simply a situation, like too many others, where the behavior of one spouse deteriorated as time passed, without any preconceived plan to that end, and without the concealment of any condition that affected the marriage contract. This subsequent misconduct could not be visited back upon a transaction growing out of a presumptive voluntary gift motivated by the affection of a man for his mate.
As for fraud, we find none at all. The woman made no misrepresentation of any existing fact that led the husband to injury. All her misdeeds were developments that neither spouse had in mind nor could have anticipated.' The mother simply became addicted to the use of alcohol and her other conduct was attributable to the habit. Bad as it -became it had no retroactive effect upon a gift made to her by her husband at the outset of the marriage venture by solemn instruments establishing definite estates. Walsh v. Walsh, 372 Ill. 254, 23 N.E.2d 341; Hendrickson v. Hendrickson, 95 Cal.App. 487, 272 P. 1079; Baird v. Baird, Mont., 232 P.2d 348.
A holding that miscondüct on the part of a spouse, such as is manifest in this record, would justify invalidation of an estate by the entirety created early in the marriage venture would come perilously close to announcing that such estates -had no efficacy until death has placed the whole interest in the survivor, for not until then would it be thoroughly established that the marriage had been successful and that the expectations of rectitude had been realized.
Although adherence to the rules of law protecting such estates may appear in this case to work a hardship on an innocent child and to reward an undeserving mother, it should not be forgot that the mother is probably not beyond redemption and that her love for her child and the protection the law affords him may quite naturally result in his eventually receiving, directly or indirectly, a share in the property.
It seems to us that it would be proper for the-court to retain jurisdiction of the original cause of Isabel Copeland v. Edward Rivers Copeland for the purpose of entertaining petitions for appropriate or *856 ders affecting the custody of the child and requiring the mother to contribute to the cost of his support, care, maintenance, and education. See 39 Am.Jur. page 642.
That part of the decree relating to the property is reversed; that part adjudicating custody of the child is affirmed.
Affirmed in part and reversed in part.
TERRELL, SEBRING, HOBSON, MATHEWS and DREW, JJ., concur.
ROBERTS, C. J., concurs in part and dissents in part.